IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-447

Filed 6 February 2024

Craven County, Nos. 18 CRS 53216, 20 CRS 36-38, 21 CRS 75-76

STATE OF NORTH CAROLINA

v.

JULIE ANN MINCEY

Appeal by Defendant from judgment entered 8 August 2022 by Judge John E. Nobles, Jr. in Craven County Superior Court. Heard in the Court of Appeals 14 November 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Llogan R. Walters, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for Defendant.*

WOOD, Judge.

On 8 August 2022, a jury convicted Julie Ann Mincey ("Defendant") of nine counts of embezzlement and one count of obtaining property by false pretenses. Defendant then pleaded guilty to attaining habitual felon status. The same day, the trial court sentenced her to forty-four to sixty-five months imprisonment, and Defendant gave oral notice of appeal in open court. Defendant argues the trial court erred in determining a factual basis exists for her guilty plea because the state of Colorado now classifies an underlying felony for which she was convicted as a

misdemeanor.  We hold the trial court complied with N.C. Gen. Stat. § 15A-1022(c) and therefore committed no error.

## I. Factual and Procedural History

On 3 February 2020, 3 August 2020, and 1 February 2021, a grand jury indicted Defendant for sixteen felony offenses: fourteen counts of embezzlement, two counts of obtaining property by false pretenses, and also for attaining habitual felon status.  The victims were patrons of the travel agency for which Defendant worked.

Defendant's trial was held 1-8 August 2022.  Of the sixteen charged offenses, five were dismissed, and eleven ultimately reached the jury, specifically ten counts of embezzlement and one count of obtaining property by false pretenses.  The jury found Defendant not guilty of one count of embezzlement but guilty of the remaining ten offenses.  Defendant then pleaded guilty to attaining habitual felon status.

The trial court consolidated the offenses and entered one judgment, imposing a sentence in the mitigated range of forty-four to sixty-five months imprisonment and ordering restitution of $53,402.58.  Defendant gave oral notice of appeal in open court. All other facts are provided as necessary in our analysis.

## II. Analysis

Defendant argues the trial court failed to comply with N.C. Gen. Stat. § 15A-1022(c), which states:

> The judge may not accept a plea of guilty or no contest
> without first determining that there is a factual basis for

the plea. This determination may be based upon information including but not limited to:

> (1) A statement of the facts by the prosecutor.
> (2) A written statement of the defendant.
> (3) An examination of the presentence report.
> (4) Sworn testimony, which may include reliable hearsay.
> (5) A statement of facts by the defense counsel.

N.C. Gen. Stat. § 15A-1022(c) (2022). Specifically, Defendant argues there was no factual basis for the guilty plea because the second underlying felony used to determine Defendant had attained habitual felon status is no longer a felony. Defendant contends this Court should consider whether a defendant's underlying felonies are still felonies at the time a defendant committed the substantive offense for which he or she is currently being sentenced.

The habitual felon indictment alleged:

> UNDERLYING FELONY NUMBER 2:
>
> On April 22, 1991, in case number 90 CR 1082, in the District Court of Denver County, Colorado, the Defendant, then known as Julie Ann Mincey was convicted of Second Degree Forgery, a Class 5 felony, in violation of Colorado Statute 18-5-103; the aforesaid offense occurred on or about March 15, 1990, and was committed against the State of Colorado.

The trial court engaged in the colloquy required under N.C. Gen. Stat. § 15A-1022(c). Specifically, the State repeated to the trial court the information contained in the indictment regarding the second underlying felony conviction. The State then admitted into evidence "copies of the statutes from Colorado . . . in effect on the dates

of those convictions, as well as certified records of [Defendant's] prior convictions." Specifically, the State admitted "State's Sentencing Exhibit Number 3 [which] is the statute from 1991 which is the subject of the second conviction in the defendant's habitual felon indictment."

Defendant's counsel did not object to the factual basis and incorrectly stated that second-degree forgery is still a felony in Colorado:

> THE COURT: All right. All right. Any objection to this being made part of the record?
>
> [DEFENDANT'S COUNSEL]: No, your Honor. I think [the State] and I probably did the same research and we would agree that the statutes under which [Defendant] was convicted, three predicate felonies, were all designated as felonies under Colorado law at the time and still designated as felonies. There are six levels of felonies in Colorado, Judge, these follow within those ranges."

After Defendant's conviction, she determined Colorado had reclassified second-degree forgery as a misdemeanor subsequent to her 1991 conviction. Therefore, Defendant argues, the appropriate remedy is to vacate the trial court's judgment and remand for resentencing, absent the habitual felon sentencing enhancement.

Before reaching the merits of Defendant's argument, we first must determine whether this Court has jurisdiction to address Defendant's appeal. Defendant appeals from the trial court's judgment which is based on her guilty plea. N.C. Gen. Stat. § 15A-1444(a2) provides a limited right of appeal from a defendant's entry of a guilty plea:

A defendant who has entered a plea of guilty or no contest to a felony or misdemeanor in superior court is entitled to appeal as a matter of right the issue of whether the sentence imposed:

(1) Results from an incorrect finding of the defendant's prior record level under G.S. 15A-1340.14 or the defendant's prior conviction level under G.S. 15A-1340.21;
(2) Contains a type of sentence disposition that is not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level; or
(3) Contains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level.

N.C. Gen. Stat. § 15A-1444(a2) (2022). "Being an habitual felon is not a crime but rather a status which subjects the individual who is subsequently convicted of a crime to increased punishment for that crime." *State v. Patton*, 342 N.C. 633, 635, 466 S.E.2d 708, 710 (1996). Because Defendant appeals the trial court's judgment based on her purportedly deficient plea to attaining habitual felon status and therefore challenges whether her term of imprisonment was authorized by statute, she has a right of appeal pursuant to N.C. Gen. Stat. § 15A-1444(a2)(3). Therefore, this Court need not grant Defendant's petition for a *writ of certiorari* because she has a statutory right of appeal. Defendant's petition for *writ of certiorari* is dismissed as moot.

This Court has held "the requirements for accepting a defendant's stipulation to habitual felon status are statutory mandates." *State v. Williamson*, 272 N.C. App. 204, 210, 845 S.E.2d 876, 881 (2020). "[I]t is well established that when a trial court

acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *State v. Chandler*, 376 N.C. 361, 366, 851 S.E.2d 874, 878 (2020). "[A] trial court's determination as to whether a sufficient factual basis exists to support a defendant's guilty plea is a conclusion of law reviewable de novo on appeal." *State v. Robinson*, 381 N.C. 207, 217, 872 S.E.2d 28, 35 (2022). Therefore, we consider whether the trial court complied with N.C. Gen. Stat. § 15A-1022(c)'s statutory mandate requiring it to determine whether there was a factual basis for Defendant's guilty plea.

N.C. Gen. Stat. § 14-7.1(a) states, "Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon and may be charged as a status offender pursuant to this Article." N.C. Gen. Stat. § 14-7.1(a) (2022). N.C. Gen. Stat. § 14-7.1(b), in turn, provides:

> For the purpose of this Article, a felony offense is defined *to include* all of the following:
>
>> (1) An offense that is a felony under the laws of this State.
>> (2) An offense that is a felony under the laws of another state or sovereign that is substantially similar to an offense that is a felony in North Carolina, and to which a plea of guilty was entered, or a conviction was returned regardless of the sentence actually imposed.
>> (3) An offense that is a crime under the laws of another state or sovereign that does not classify any

crimes as felonies if all of the following apply:
      a. The offense is substantially similar to an offense that is a felony in North Carolina.
      b. The offense may be punishable by imprisonment for more than a year in state prison.
      c. A plea of guilty was entered or a conviction was returned regardless of the sentence actually imposed.
(4) An offense that is a felony under federal law. Provided, however, that federal offenses relating to the manufacture, possession, sale and kindred offenses involving intoxicating liquors shall not be considered felonies for the purposes of this Article.

N.C. Gen. Stat. § 14-7.1(b). (Emphasis added). This Court has held, "*Any person* who has been convicted of or pled guilty to three felony offenses is declared by statute to be an habitual felon." *State v. Ross*, 221 N.C. App. 185, 188, 727 S.E.2d 370, 373 (2012) (emphasis added).

Here, the trial court conducted the necessary colloquy pursuant to N.C. Gen. Stat. § 15A-1022(c) to determine whether there was a factual basis for Defendant's guilty plea to attaining habitual felon status. The State entered the Colorado statutes to show Defendant's underlying crimes constituted felonies at the time she committed them. Specifically, in 1991, Colorado classified second-degree forgery as a "class 5 felony." COLO. REV. STAT. § 18-5-103(2) (1991). Therefore, second-degree forgery was a felony at the time of Defendant's April 1991 conviction. Accordingly, we hold the trial court did not err in determining there was a factual basis for Defendant's guilty plea.

It is true that in 1993, Colorado repealed COLO. REV. STAT. § 18-5-103 and in its place enacted COLO REV. STAT. § 18-5-104 (1993) which classified second-degree forgery as a "class 1 misdemeanor." COLO. REV. STAT. § 18-5-104(2) (1993); 1993 Colo. Sess. Laws 324 (West). Nonetheless, we hold that pursuant to N.C. Gen. Stat. § 15A-1022(c), there was sufficient evidence for the trial court to properly determine a factual basis existed showing Defendant had committed three prior felonies, including the second-degree forgery felony. Both N.C. Gen. Stat. § 14-7.1(a) and this Court's decision in *Ross* make clear that *any person* who is convicted of or pleads guilty to three felony offenses attains habitual felon status. Moreover, the definition of "felony offense" in N.C. Gen. Stat. § 14-7.1(b) *includes*, but by the language of the statute is not limited to, the examples listed in that subsection. We hold this application of the habitual felon statute is compatible with the "primary goals" of a recidivist statute:

> to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.

*State v. Hall*, 174 N.C. App. 353, 354, 620 S.E.2d 723, 725 (2005) (quoting *Rummel v. Estelle,* 445 U.S. 263, 284, 100 S. Ct. 1133, 1144–45 63 L. Ed. 2d 382, 397 (1980)); *see also State v. Kirkpatrick*, 345 N.C. 451, 454, 480 S.E.2d 400, 402 (1997).

Finally, Defendant offers two examples which she argues provide analogous support for the proposition that this Court should consider whether an underlying predicate felony is classified as a felony at the time a defendant commits the substantive offense for which he or she is being sentenced. First, Defendant argues we should read *State v. Mason* to mean that this Court considers reclassifications of felonies rather than prior classifications for purposes of establishing violent habitual offender status under N.C. Gen. Stat. § 14-7.7 (2022). 126 N.C. App. 318, 484 S.E.2d 818, 821 (1997). In *Mason*, however, this Court merely rejected the argument that using reclassified statuses of felonies (from H and F to reclassification as Class E felonies) violated the defendant's protection against *ex post facto* laws. *Id.* at 323–24, 484 S.E.2d at 821.

Second, Defendant argues that for purposes of calculating a defendant's prior record level, the statute specifically provides: "In determining the prior record level, the classification of a prior offense is the classification assigned to that offense at the time the offense for which the offender is being sentenced is committed." N.C. Gen. Stat. § 15A-1340.14(c) (2014). However, the legislature is entitled to include such a requirement in one part of this State's statutes while choosing not to include it in another part. For purposes of the habitual felon statute in N.C. Gen. Stat. § 14-7.1, there is no statutory requirement to consider whether an underlying crime is a felony at the time of a defendant's substantive offense. We decline to read such a requirement into the statute.

Because the trial court complied with N.C. Gen. Stat. § 15A-1022(c) in accepting Defendant's guilty plea, the trial court committed no error. Therefore, the judgments of the trial court are affirmed.

AFFIRMED.

Judge THOMPSON concurs.

Judge ARROWOOD dissents by separate opinion.

No. COA23-447 – *State v. Mincey*

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's opinion. Unlike the majority, I believe defendant has no right of appeal under N.C.G.S. § 15A-1444(a2). *See State v. Young*, 120 N.C. App. 456, 459 (1995) ("Having pleaded guilty to being an habitual felon, and not having moved in the trial court to withdraw his guilty plea, defendant is not entitled to an appeal of right from the trial court's ruling."). However, this Court has allowed petitions for writ of certiorari "in order to permit review of appeals concerning the adequacy of the factual bases underlying defendants' guilty pleas." *State v. Robinson*, 275 N.C. App. 330, 333 n. 2 (2020) (citing *State v. Keller*, 198 N.C. App. 639, 641–42 (2009)). Accordingly, I would allow the petition.

Also in my view, the majority erroneously concludes that courts should review prior offenses based on their classification at the time the prior offense was committed. Our law indicates otherwise. Statute governing habitual felon status defines a felony offense as

> (1) An offense that *is* a felony under the laws of this State.

> (2) An offense that *is* a felony under the laws of another state or sovereign that is substantially similar to an offense that is a felony in North Carolina, and to which a plea of guilty was entered, or a conviction was returned regardless of the sentence actually imposed.

> (3) An offense that *is* a crime under the laws of another state or sovereign that does not classify any crimes as felonies if all of the following apply:
> a. The offense is substantially similar to an offense

that is a felony in North Carolina.
  b. The offense may be punishable by imprisonment
for more than a year in state prison.
  c. A plea of guilty was entered or a conviction was
returned regardless of the sentence actually imposed.

N.C.G.S. § 14-7.1(b) (emphasis added). "It is well-established that the ordinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved usage of the language." *State v. Fuller*, 376 N.C. 862, 867 (2021) (cleaned up). The statute's use of the present tense "is," as emphasized above, indicates the legislature's intent that prior offenses must be considered felonies at the time of the offense for which the defendant is being sentenced for purposes of § 14-7.1.

Further, "we may look to other similar statutes to help define terms." *Id.* at 868 (citing *In re Banks*, 295 N.C. 236, 239–40 (1978)); *see also In re Miller*, 243 N.C. 509, 514 (1956) ("[T]here is a presumption against inconsistency, and when there are two or more statutes on the same subject, in the absence of an express repealing clause, they are to be harmonized and every part allowed significance, if it can be done by fair and reasonable interpretation."). Our statute regarding prior record levels for felony sentencing states that "[i]n determining the prior record level, the classification of a prior offense is the classification assigned to that offense *at the time the offense for which the offender is being sentenced is committed*." N.C.G.S. § 15A-1340.14(c) (emphasis added). While the majority correctly identifies the authority of the legislature to include a provision within one statute and not another, this explicit

clarification within a similar statute from our legislature, coupled with the present-tense language of the habitual felon statute, clearly indicates that courts are meant to examine the classifications of prior offenses at the time of the offense the defendant is being sentenced, not at the time the prior offense was committed.

Our case law also supports this interpretation. In *State v. Mason*, the trial court treated a defendant's crimes as Class E felonies for purposes of establishing violent habitual offender status even though they were Class H and F felonies at the time of their commission. 126 N.C. App. 318, 324 (1997). The majority is correct that the Court in *Mason* concluded that considering reclassifications rather than the classification at the time of the offense for violent habitual felon status did not violate *ex post facto* laws. *Id.* However, this Court has held that when the legislature has promoted an offense to a higher class, the amended class is used to determine violent habitual felon status. *See State v. Wolfe*, 157 N.C. App. 22, 37 (2003); *see also State v. Covington*, No. COA06-1575, 2007 WL 2827983 at *4 (N.C. App. Oct. 2, 2007) (holding that where a defendant's previous crimes were Class H felonies at the time of his convictions but had been reclassified by the legislature as Class A through E felonies by the time of his present conviction, the reclassified convictions "may be used to achieve violent habitual felon status.").

In *State v. Wolfe*, a defendant argued that one of the felonies the State presented did not qualify to achieve violent habitual felon status. 157 N.C. App. at 37. Specifically, a previous voluntary manslaughter conviction was a Class F felony

3

when the defendant was convicted in 1987, but it was a Class D felony at the time of his trial for the substantive offense. *Id.* The Court rejected his argument that the State could not "elevate an offense classification from its previous class for purposes of satisfying violent habitual felon status." *Id.* To allow trial courts to enhance punishment under *Mason* and *Wolfe* but instruct them otherwise when the reclassification potentially reduces punishment, as is the case *sub judice*, would be inconsistent and contrary to principles of justice.

In contrast, this Court held that a defendant's prior conviction for grand larceny, though it no longer constituted a felony, served as a valid predicate offense for the defendant to attain habitual felon status. *State v. Hefner*, 289 N.C. App. 223, 230 (2023). However, a statutory amendment after the defendant's conviction increasing the amount required to establish grand larceny included a savings clause that provided the amendment "does not affect liability incurred under the previous version of the statute." *Id.* Additionally, the statutory amendment did not change the classification of grand larceny as a felony. *Id.*

This case is distinguishable from *Hefner*. While the offense in *Hefner* remained a felony after the amendment, the 1993 amendment to the Colorado second-degree forgery statute at issue here reduced the classification of the offense from a Class 5 felony to a Class 1 misdemeanor. COLO. REV. STAT. § 18-5-104 (2022) (classifying second-degree forgery as a Class 2 misdemeanor); *see also* 1993 Colo. Legis. Serv. H.B. 93-1302 (West). Even moreso, the 1993 amendment contained no savings clause

4

*ARROWOOD, J., dissenting.*

maintaining liability under previous versions of the statute. The facts that permitted the outcome in *Hefner* are not present in this case, and *Hefner* does not control here. Accordingly, the trial court should consider the prior conviction's classification at the time of sentencing for the substantive offense. Therefore, I would remand this matter for resentencing.